**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: jmarchese@bursor.com
          mroberts@bursor.com

*Attorneys for Plaintiff*

**Pro Hac Vice Application Forthcoming*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA ROCHA, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>URBAN OUTFITTERS, INC.,<br><br>  Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jessica Rocha ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Urban Outfitters, Inc. ("Urban Outfitters," or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action suit brought against Defendant Urban Outfitters, Inc. ("Urban Outfitters," or "Defendant") for aiding, agreeing with, employing, or otherwise enabling the wiretapping of electronic communications of visitors to its website, urbanoutfitters.com (the "Website").  The wiretaps, which are embedded in the chat function on the Website, are used without the consent of visitors to the Website.  Defendant contracts with a third party, Salesforce, Inc. ("Salesforce") to provide the software that runs Defendant's chat function.  The electronic communications made in the chat function are routed through the servers of and are used by Salesforce to, among other things, secretly observe and record website visitors' electronic communications in real time.  The nature of Salesforce's licensing agreement with Defendant is such that Defendant "aids, agrees with, employs, or conspires" to permit Salesforce to read and use the chats without the consent of visitors to the Website, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631.

2. Plaintiff brings this action on behalf of herself and a class of all California residents who used Salesforce's Chat function on the Urban Outfitters website while in California, and whose electronic communications were intercepted or recorded by Salesforce (the "Class").

**PARTIES**

3. Plaintiff Jessica Rocha is a California resident and citizen who lives in Oakley, California.  While in California, Ms. Rocha visited the Urban Outfitters website from her computer, including most recently in or about late-2022.  On those occasions, Ms. Rocha used the chat function on the Website.  During these visits, the electronic communications that she entered in the chat function were intercepted in real time and were disclosed to Salesforce through the wiretap.  Ms. Rocha was unaware at the time that her electronic communications were being

intercepted in real-time and would be disclosed to Salesforce. She was not asked for, nor did she provide her prior consent to, disclosure of her chats to Salesforce.

4. Defendant Urban Outfitters is a Pennsylvania corporation with its principal place of business at 5000 South Broad Street Philadelphia, PA, 19112.

5. Urban Outfitters is a multinational lifestyle retail that operates in the United States and worldwide. Urban Outfitters brand targets young adults with a merchandise mix of women's and men's fashion apparel, footwear, beauty and wellness products, accessories, activewear and gear, and housewares, as well as music, primarily vinyl records and cassettes.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant carries on continuous and systematic business in California, including the operation of 37 retail stores in the state, and Plaintiff's injuries arise out of or relate to Defendant's conduct in this District.

8. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because the events giving rise to this action occurred within this judicial district.

## FACTUAL ALLEGATIONS

I. **Overview Of The Wiretaps**

9. Salesforce offers for sale a software service called "Chat," which is a combination of a basic customer service chat function and backend analytics tools to ostensibly improves a company's customer service experience.

10. The Chat service can be used with any website, as Chat is an Application Programming Interface (API) that can be "plugged into" an existing website. The Chat API is run from Salesforce web servers but allows for chat functionality on the contracting company's website. A company must purchase a license from Salesforce to use the Chat feature on its website.

11. In short, Salesforce runs the Chat service from its servers, but customers interact with the Chat service on a separate company's website. Urban Outfitters is one of those companies. Thus, whenever a chat message is sent from Plaintiff to Urban Outfitters customer service, it is first routed through a Salesforce server.

12. The Chat service needs to run on Salesforce servers because Salesforce analyzes the customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services.

13. The Live Agent Administrator Manual (the "Manual") from Salesforce notes that "Chat transcripts are created automatically and are meant to provide a paper trail about your agents' interactions with customers."

14. The Manual further provides that supervisors can view transcripts in real time. This is accomplished because the contents of the chat are being routed through Salesforce webservers in real time, and then sent to the supervisor requesting the live transcript.

15. Thus, through the Chat function, Salesforce is able to record the other electronic communications of visitors to websites where the code is installed, including the content of all chat communications between a website and visitors to the website. It also allows Salesforce to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

16. An example of this transmission of data can be seen in the image below. As a chat message is sent to the Urban Outfitters customer service representative (*picture left*), network traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture right*), as indicated by the "request URL" being "salesforceliveagent.com."

//
//
//
//
//



17. Thus, through the Chat function, Salesforce directly receives the electronic communications of visitors to Urban Outfitters's website, in real time.

18. Salesforce's Chat also has a "Sneak Peek" feature, which is operating on the Website as indicated by the code above.

19. When "Sneak Peek" is enabled on a website (such as Defendant's), as the below screenshots of a demonstration of Sneak Peek indicate, anything that "an end user" types is displayed on Salesforce's dashboard[1]:

//
//
//
//
//
//
//
//
//
//
//

---

[1] HOW TO SETUP SNEAK PEEK IN SALESFORCE CHAT?, https://youtu.be/lGDdRcVBPzU.



20.     More invasively, the "Sneak Peak" feature transmits what a user is communicating to a website *before* a user actually sends the chat.  In other words, if a user simply types something into the Chat function, the message is transmitted to Salesforce before "Send" is clicked:

//

//

//



21. Accordingly, as currently deployed on Defendant's Website, Salesforce's Chat function functions as a wiretap.

22. When Chat is used on a website conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Chat involves Salesforce—a separate and distinct third-party entity from the parties to the conversation—using Chat to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is so because Salesforce itself is collecting the content of any conversation. That data is then analyzed by Salesforce before being provided to any entity that was a party to the conversation (like Defendant).

23. Salesforce's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites through Chat.

24. One of Salesforce's partners is Defendant Urban Outfitters.

25. Pursuant to an agreement with Salesforce, Urban Outfitters aided, agreed with, employed, or otherwise enabled Salesforce to wiretap visitors to its Website by voluntarily embedding the software code for Chat on the Website.

26. Urban Outfitters knows that Salesforce, through software, captures the electronic communications of visitors to the Website, and pays Salesforce to conduct these activities.

II. **Defendant Aided, Agreed With, Employed, Or Otherwise Enabled Salesforce's Wiretapping Of Plaintiff's Electronic Communications**

27. During the holiday season of 2022, Ms. Rocha visited Defendant's Website. During those visits, Ms. Rocha used the Chat function to speak with an Urban Outfitter agent.

28. During those visits, Salesforce, through the Chat function, intercepted the content of Plaintiff's electronic communications with Defendant's customer service agent in real time. The Salesforce wiretap also captured the date and time of the visits, the duration of the visits, Plaintiff's IP addresses, her locations at the time of the visits, her browser types, and the operating system on her devices.

29. Salesforce's recording of electronic begins the moment a user accesses or interacts with the Chat feature on Defendant's website, prior to a user consenting to any sort of privacy policy or the wiretaps generally. Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Salesforce, rather than only to Defendant's customer service agent.

30. Users, including Ms. Rocha, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

31. Ms. Rocha was in California when she accessed Defendant's website through an internet browser. Upon having the browsers access the website in California, Salesforce's Chat function instructed the browser in California to send electronic communications directly to it from the California location of the browser to Saleforce's servers, which are also located in California.

32. Salesforce has access to class members' chat interactions with Urban Outfitters because Salesforce contracts with Urban Outfitters to provide the Chat service.

## CLASS ALLEGATIONS

33. Plaintiff seeks to represent a class of all California residents who used Salesforce's Chat function on the Urban Outfitters website while in California, and whose electronic communications were intercepted or recorded by Salesforce (the "Class").

34. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The

precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

35. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to, whether Defendant has violated CIPA and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

36. The claims of the named Plaintiff are typical of the claims of the Class because the Ms. Rocha, like all other class members, visited Urban Outfitters's website and had her electronic communications intercepted and disclosed to Salesforce through the use of Salesforce's Chat function.

37. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

38. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT ONE
### Violation of California Invasion of Privacy Act
### Cal. Penal Code § 631

39. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

40. Plaintiff brings this claim against Defendant individually and on behalf of the Class.

41. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> *Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

42. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook,*

*Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

43. Salesforce's Chat product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

44. Salesforce is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Salesforce was a third party to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

45. At all relevant times, by using Chat, Salesforce willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, on the one hand, and Defendant's Website, on the other, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

46. At all relevant times, Defendant aided, agreed with, employed, and conspired with Salesforce to have Salesforce wiretap consumers to the Website using Chat and to accomplish the wrongful conduct at issue here.

47. Plaintiff and Class Members did not consent to Salesforce's intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications. Nor did Plaintiff and Class Members consent to Defendant aiding, agreeing with, employing, or otherwise enabling Salesforce's conduct.

48. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

49. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For judgment in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded; and

(f) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: February 6, 2023            **BURSOR & FISHER, P.A.**

By:      */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163

Email: jmarchese@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

*\*Pro Hac Vice Application Forthcoming*